(April 16, 1906.)

G. E. NOBLE, State Veterinary Surgeon, Petitioner and Plaintiff, v. ROBERT S. BRAGAW, State Auditor, Defendant.

[85 Pac. 903.]

Constitutional Law—Repeal, Amendment and Revision of Legislative Act—Publication of Section as Amended—State Veterinary Surgeon—Duties of—Rule of Statutory Construction—Abolishment of Office—Duties Imposed on Others—Express and Implied Repeals—Amendatory Acts—Act Part Constitutional and Part Unconstitutional.

1. Before a legislative act is held unconstitutional, it should appear beyond a reasonable doubt that it infringes some provision of the constitution. Section 18 of article 3 of the state constitution prohibits the legislature from revising or amending any act by mere reference to its title and commands that the section as amended shall be set forth and published at full length.

2. Said section of the constitution does not require the whole act containing the section amended to be republished in full; it only requires republication of the section amended.

3. An act approved February 6, 1905 (Sess. Laws 1905, p. 39), is an act for the suppression of contagious and infectious diseases

among livestock, and repeals certain provisions of an act entitled, "An act to suppress contagious and infectious diseases of sheep, etc.," approved March 7, 1901 (Sess. Laws 1901, p. 142), and continues in force certain provisions of said act relative to the authority and duties of the state sheep inspector and his deputies, and imposes those duties on the state veterinary surgeon and those under him.

4. Under the provisions of said section 18, article 3 of the constitution, a repeal may be made of a certain section or of an entire act without republishing the whole of the same, as said section of the constitution has no application to repeals, but only to revisions and amendments.

5. Section 39 of the act of 1905 provides, among other things, that its provisions should not be so construed as repealing any provision of the act of 1901 not inconsistent with or in conflict with the provisions of the act of 1905, and then declares that the remaining provisions of the act of 1901 and the act of 1905 should be construed together for the purpose of carrying out the objects sought by each, to wit, the eradication of contagious and infectious diseases among the livestock in the state. That is only an announcement of the legislative intent and correctly states the rule applicable to the construction of two acts or two laws bearing on the same subject.

6. The act of 1905 abolishes the office of state sheep inspector and his deputies, and in their place creates the office of state veterinary surgeon, assistants and livestock inspectors, and to that extent repeals the act of 1901. Said act of 1905 prescribes many of the duties of said last-mentioned officers, and in addition requires them to perform all of the duties required by the act of 1901 to be performed by the state sheep inspector and deputies not repealed by said act of 1905.

7. The abolishment of an appointive office by an act of the legislature and imposing the duties of such office on another officer without enumerating in detail such duties, in no manner violates the provisions of section 18, article 3 of the constitution.

8. Neither express nor implied repeals come within the constitutional inhibition contained in said section 18, article 3 of the constitution.

9. Two or more laws relating to the same subject, or different parts of the same subject, are not necessarily amendatory to each other within the meaning of the provisions of said section 18 of article 3 of the constitution, although they may be construed *in pari materia.*

(Syllabus by the court.)

APPLICATION for a writ of mandate to compel the state auditor to issue a state warrant in payment of the state veterinary surgeon's salary.   *Writ granted.*

Richards & Haga, for Plaintiff.

Every possible presumption is to be indulged in favor of the validity of the statute.   (*Fletcher v. Peck,* 6 Cranch, 128, 3 L. ed. 162; *Ogden v. Saunders,* 12 Wheat. 270, 6 L. ed. 606; *Mulger v. Kansas City,* 123 U. S. 623, 31 L. ed. 205, 8 Sup. Ct. Rep. 273.)

Section 3, article 18, of the Idaho constitution does not apply to acts that do not purport to amend or revise.   It has no application to amendments by implication, or to repeals, either express or by implication; it does not require all the law on that particular subject to be republished in full; it only requires the republication of the *section* which it purports to amend, and if the amendment is caused by implication, no republication is necessary.   (*Gilbert v. Moody,* 3 Idaho, 3, 25 Pac. 1092.)

The leading case on the construction of such constitutional provision as is now before the court is *People v. Mahaney,* 13 Mich. 496.   See, also, *Evernham v. Hulit,* 45 N. J. L. 53; *Denver Circle R. R. Co. v. Nester,* 10 Colo. 403, 15 Pac. 714: *People v. Wright,* 70 Ill. 388; *Long v. Sullivan,* 21 Colo. 109, 40 Pac. 359; *Warren v. Crosby,* 24 Or. 558, 34 Pac. 661; *Northern Counties Investment Co. v. Sears,* 30 Or. 388, 41 Pac. 931, 35 L. R. A. 188; *Hellman v. Shoulters,* 114 Cal. 136, 44 Pac. 915, 45 Pac. 1057; *Lake v. State,* 18 Fla. 501; *State v. Cain,* 8 W. Va. 720; *State v. Moore,* 48 Neb. 870, 67 N. W. 876; *County Commrs. of Dorchester Co. v. Meekins,* 50 Md. 28, 44; *State v. Bennett* (Mo.), 11 S. W. 264; *State v. Scott,* 32 Wash. 279, 73 Pac. 365; *State v. Rogers,* 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; *Arnoult v. New Orleans,* 11 La. Ann. 54; *State v. Miller,* 100 Mo. 439, 13 S. W. 677; *Johnson v. Martin,* 75 Tex. 33, 12 S. W. 321; 26 Am. & Eng. Ency. of Law, 2d ed., 711, 714; *State v. Jones,* 9 Idaho, 693, 75 Pac. 819; *School Directors v. School Directors,* 135 Ill. 464;

28 N. E. 49. Where one construction of ambiguous words in an amendatory act would render it obnoxious to this constitutional inhibition, and another construction would render it valid, the latter must be adopted. (26 Am. & Eng. Ency. of Law, 707; *Horkey v. Kendall,* 53 Neb. 522, 68 Am. St. Rep. 623, 73 N. W. 953; *State v. Frank,* 60 Neb. 327, 83 N. W. 74.)

An act will not be held unconstitutional merely because there may be persons to whom or cases in which it cannot in all respects constitutionally apply.

The objections urged by defendant as to its being impossible to determine what portions of the old act are left intact by reason of the reference thereto made in section 39 of the act of 1905 are not available as to him and as against plaintiff. (*Airy v. People,* 21 Colo. 144, 40 Pac. 362; *McKinney v. State,* 3 Wyo. 719, 30 Pac. 293, 295, 16 L. R. A. 710; *Newman v. People,* 23 Colo. 300, 47 Pac. 278; Cooley's Constitutional Limitations, 5th ed., 197; *Davidson v. Von Detten,* 139 Cal. 467, 73 Pac. 189.)

J. J. Guheen, Attorney General, and Edwin Snow, for Defendant.

The act of March 6, 1905, by the provisions of section 39, clearly and in terms amends the act of the legislature approved March 7, 1901 (Sess. Laws 1901, p. 142); and by reason of such amendment the entire act of March 6, 1905, becomes interwoven with the portions of the act of 1901 so amended, so that the whole act of March 6, 1905, is thereby rendered void. (*Warren v. Crosby,* 24 Or. 558, 34 Pac. 661.)

Sections of the constitution similar to the one involved in this case are common in the constitutions of most of the states. The books are full of cases in which similar attempts were made to evade these constitutional provisions. Some of these amended sections of the law by title; others ingrafted further provisions of the law upon sections which were referred to only by stating the substance of them; and still other cases simply set forth certain new provisions of the law, but which, in their very nature, had to be construed

in connection with existing legislation, or must otherwise have become entirely inoperative. (*Barnhill v. Teague,* 96 Ala. 207, 11 South. 444; *In re Buelow,* 98 Fed. 86; *Copland v. Pirie,* 26 Wash. 481, 90 Am. St. Rep. 769, 67 Pac. 227; *Stricklett v. State,* 31 Neb. 674, 48 N. W. 820; Cooley's Constitutional Limitations, 7th ed., p. 214; Sutherland on Statutory Construction, 2d ed., sec. 231, and cases there cited; 44 Century Digest, col. 2695, where a large number of cases are given; 26 Am. & Eng. Ency. of Law, 2d ed., p. 707; *Lehman v. McBride,* 15 Ohio St. 602; *Tuskaloosa Bridge Co. v. Olmstead,* 41 Ala. 9; *Miller v. Berry,* 101 Ala. 531, 14 South. 655; *Haring v. State,* 51 N. J. L. 386, 17 Atl. 1079; *State v. Beddo,* 22 Utah, 432, 63 Pac. 96 (followed in several subsequent cases); *Judson v. Bessemer,* 87 Ala. 240, 6 South. 267, 4 L. R. A. 742; *Beard v. Wilson,* 52 Ark. 290, 12 S. W. 567; *Dodd v. State,* 18 Ind. 56; *Haverly v. State,* 63 Neb. 83, 88 N. W. 171; *In re House Roll No. 284,* 31 Neb. 505, 48 N. W. 275; *French v. Woodward,* 58 Mo. 66; *Walker v. Caldwell,* 4 La. Ann. 297; *State v. Guiney,* 55 Kan. 532, 40 Pac. 926.)

Fremont Wood and Edgar Wilson, *amici curiae.*

We contend that section 39 of the act known as the state veterinary law clearly revised and is amendatory of the law creating the office of sheep inspector, prescribing his duties, etc., approved March 7, 1901, and that it therefore violates section 18 of article 3 of our state constitution.

It is absolutely impossible to read the act of 1905 and know what the law on the subject is without a judicial interpretation of every section of the act of 1901. To prevent this condition of affairs arising in legislation the above section of our constitution was adopted. (Citing, in addition to authorities cited by counsel for defendant, 23 Am. & Eng. Ency. of Law, 278, and following: *Evernham v. Hulit,* 45 N. J. L. 53; *State v. Parsons,* 40 N. J. L. 123; *Colwell v. Chamberlain,* 43 N. J. L. 388; *Campbell v. Board of Pharmacy,* 45 N. J. L. 241; *State v. McNeal (Christie v. Bayonne),* 48 N. J. L. 407,

5 Atl. 805; *State v. Morrey,* 23 Utah, 273, 64 Pac. 764; *State v. Buker,* 23 Utah, 276, 64 Pac. 1118; *Denver Circle R. Co. v. Nester,* 10 Colo. 403, 15 Pac. 715; *Long v. Sullivan,* 21 Colo. 109, 40 Pac. 359.)

A simple inspection of the state veterinary law of 1905 clearly shows that it sought to amend specifically, and not by implication, the state sheep inspector law of 1901, and it attempted to do this without setting forth in full the law of 1901, or any section thereof as thus amended. If the legislature can do this in this instance, then it can do it in any instance, and section 18 of article 3 of our constitution would be an absolute nullity.

SULLIVAN, J.—This is an application for a writ of mandate to the auditor of the state to compel him to issue certain state warrants to the plaintiff on account of his salary as state veterinary surgeon, and for certain expenses connected with said office. The defendant answered the petition for the writ and put in issue the constitutionality of the act creating the office of veterinary surgeon, which was approved March 6, 1905, and is entitled, "An act to suppress contagious and infectious diseases among livestock; creating a livestock sanitary board and providing for its appointment; to create the office of state veterinary surgeon, providing for his appointment and fixing his compensation, providing for the appointment of assistant veterinary surgeons and livestock inspectors and fixing their compensation; prescribing penalties for the failure to comply with the provisions of this act; creating a livestock sanitary fund and providing for the levying of a tax therefor." (Sess. Laws 1905, p. 39.) Said act was evidently passed pursuant to the provisions of section 1 of article 16 of our state constitution. This act belongs to that class of legislation known as police regulations and is under the head of police powers, which powers embrace the powers of the government to preserve and promote the public welfare, the safety, the health, good order and happiness of the people, and authorize the establishment

of such rules and regulations for the conduct of all persons, and for the use and management of all property as may be conducive to the public interest and welfare of the people. Said act contains forty sections and appears to be a very carefully drawn act covering the entire subject contained in the title, its main purpose being to eradicate infectious and contagious diseases from the livestock of the state. The principal contention arises over the provisions of section 39 of said act, which is as follows: "This act is intended to repeal those provisions of that certain act of the legislature entitled 'An act to suppress contagious and infectious diseases of sheep, to create the office of sheep inspector and deputy sheep inspectors; to provide for the appointment of the same and to fix their compensation; making the doing of certain acts a crime and providing for the punishment of the same; and for other purposes, and repealing an act entitled "An act to repress contagious and infectious diseases of sheep; to create the office of state sheep inspector and of deputy sheep inspectors, to provide for the appointment of the same and to fix their compensation; making the doing of certain acts a crime and providing for the appointment of the same and for other purposes," approved February 25, 1899,' which creates the office of sheep inspector and deputy sheep inspectors for the state of Idaho, but shall not be construed as repealing any other provision of said act not inconsistent or in conflict with the provisions of this act, but these acts shall be construed together for the purpose of carrying out the objects sought by each of said acts, to wit, the suppression and eradication of contagious and infectious diseases among livestock in this state, and the state veterinary surgeon shall possess all the authority granted to the state sheep inspector under said act, and the assistant veterinary surgeons and inspectors to be appointed under this act shall possess all the powers of a deputy sheep inspector under the said act hereinbefore, in this section, referred to."

The act referred to by title in said section 39 above quoted is found on page 142, Session Laws of 1901, approved March

7, 1901, and is entitled, "An act to suppress contagious and infectious diseases of sheep, to create the office of sheep inspector, and deputy state sheep inspectors, to provide for the appointment of the same and fix their compensation; making the doing of certain acts a crime and providing for the punishment of the same and for other purposes, and repealing an act entitled, 'An act to suppress contagious and infectious diseases of sheep; to create the office of state sheep inspector and of deputy sheep inspectors, to provide for the appointment of the same and fix their compensation; making the doing of certain acts a crime and providing for the punishment of the same and for other purposes,' approved February 25, 1899." That act applied to sheep only, while the act in question includes all livestock. It is contended by counsel for the defendant that said section 39 is amendatory of said act approved March 7, 1901, and for that reason it violates the provisions of section 18 of article 3 of our state constitution, which section is as follows: "No act shall be revised or amended by mere reference to its title, but the section as amended shall be set forth and published at full length."

The rule is well established in this country that a legislative act is presumed to be constitutional until it is shown beyond all reasonable doubt that it is not so, and that presumption has been followed since the days of the great Chief Justice Marshall, when he declared that the question whether a law be void from its repugnancy to the constitution is at all times a question of much delicacy which ought seldom, if ever, to be decided in the affirmative in a doubtful case. And he stated in *Fletcher v. Peck,* 6 Cranch, 128, 3 L. ed. 162, that "the opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other" before a court would hold a law unconstitutional. In *Ogden v. Saunders,* 12 Wheat. 270, 6 L. ed. 606, the supreme court of the United States said: "It is but a decent respect due the wisdom, the integrity and the patriotism of the legislative

body by which any law was passed, to presume in favor of its validity until its violation of the constitution is proved beyond all reasonable doubt.'' In *Mugler v. Kansas,* 123 U. S. 623, 31 L. ed. 205, 8 Sup. Ct. Rep. 273, the supreme court of the United States said: ''Every possible presumption is to be indulged in favor of the validity of a statute.'' Then guided by that well-established rule, the question for decision is: Does said act conflict with said section 18 of article 3 of the state constitution? That section provides that no act shall be revised or amended by mere reference to its title, but the section as amended shall be set forth and published at length. The limitation therein contained is not upon the powers of the legislature to legislate, but is upon the manner in which amendments shall be made. That section applies to revision or amendment. Where the revision or amendment of a certain section of an act is made, it cannot be done by mere reference to its title, but the section as amended must be set forth and published at full length. That section of the constitution does not require the whole act containing the section amended to be republished in full; it only requires the republication of the section which it purports to amend. The evils intended to be prevented by the provisions of said section have so frequently been referred to by courts and text-writers that it is not necessary to quote from them here.

Prior to the adoption of such a constitutional provision as that contained in said section 18, the practice was very common to amend an act or section thereof by merely stating that certain words should be inserted at a certain place 'or places therein or certain words be stricken therefrom, and after several such amendments had been made, it naturally created great confusion in the law or the section so amended, and the provisions of said section of the constitution were for the purpose of preventing that evil and putting an end to that method of amendment.

With those observations we will proceed to examine the act under consideration. Said act does not purport to amend

any of the provisions of the law of 1901, or any other law except in minor or *pro forma* matters, which we will consider hereafter when we consider section 39 of said act. The latter act is complete in itself and contains forty sections. The first thirty-eight sections constitute a complete act. It creates the office of state veterinary surgeon, prescribes the qualifications of that officer, fixes his salary, defines his duties and his powers, and in great detail furnishes all the machinery required to carry those powers into effect, and the general appropriation act of 1905 makes an appropriation with which to pay the veterinary surgeon's salary. We find nothing in any of the sections of said act down to section 39 that in any manner conflicts with any provision of the constitution of the United States or the constitution of the state of Idaho. The question then arises, is there anything in the provisions of said section 39 that so contravenes the provisions of the constitution as to nullify the entire act as expressed in the first thirty-eight sections thereof? The legislative intent is clearly expressed in said section 39; that it was their purpose to repeal such parts of the act of 1901 as created the office of sheep inspector and deputy sheep inspectors of the state; that part of said section is not in conflict with the provisions of said section 18 of the constitution, for it expressly repeals such parts of the act of 1901 as create the office of sheep inspector and deputy sheep inspectors. A repeal may be made of a certain section or of an entire act without republishing the whole of the same. Said section of the constitution has no application to repeals, but only to revisions and amendments. Had the legislature stopped there, there could be no question as to the constitutionality of the act and it would have left the state with a veterinary surgeon, with the offices of sheep inspector and deputy sheep inspectors abolished, but said section proceeds further to declare that the act in question should not be construed as repealing any other provision of the act of 1901 not inconsistent or in conflict with the provisions of the act of 1905, and then declares that these acts should be construed together for the purpose

of carrying out the objects sought by each of said acts, to wit, the suppression and eradication of contagious and infectious diseases among livestock in the state. This is only an announcement of the legislative intent, and is the announcement of a correct rule of law when applied to the construction of the two acts or two laws bearing on the same subject. It is but the announcement of a rule of construction which this court always applies to statutes bearing upon the same subject. Statutes that pertain to the same subject matter should be construed together, unless they are in conflict, and in case they are, the latter or subsequent statute is deemed to repeal the former, and had section 39 ended at the point just suggested, we do not think the validity of the entire act would be questioned. In that case the office of state veterinary surgeon would have been established and the offices of state sheep inspector and deputy sheep inspectors would have been abolished by an express repeal of the provisions of the law creating them. But the legislature in said section 39 proceeded further, and declared that it was their intention that the veterinary surgeon should possess or be empowered with all of the authority granted to the state sheep inspector under the act of 1901, and therein lies the most difficult question in the case. By the latter provisions of that section the state veterinary surgeon is given the authority formerly possessed by the state sheep inspector. The powers and duties of the sheep inspector are prescribed in the act of 1901, and all of such powers and duties are not set forth and enumerated in the act under consideration. The question arises, then: Should the legislature have proceeded to set forth and enumerate the powers of state sheep inspectors that were conferred upon the state veterinary surgeon? It was not necessary for the legislature to do that, for, as I view it, the office of sheep inspector has been abolished by the act under consideration and all of the duties imposed upon him by the act of 1901, in connection with others, are imposed upon the veterinary surgeon by the act in question. The abolishment of one appointive office and imposing the duties thereof on another

without enumerating such duties in detail in the act abolishing the office, does not impinge in any manner upon said provisions of the constitution.

In *Gilbert v. Moody,* 3 Idaho, 3, 25 Pac. 1092, which involved the constitutionality of an act substituting the word "state" for the word "territory" wherever it appeared in the Revised Statutes, and the word "auditor" for the word "comptroller," and imposing the duties of the comptroller on the auditor, such act was held not in conflict with said provisions of the constitution. The leading case on the construction of the provisions of a constitution similar to those under consideration here is that of *People v. Mahaney,* 13 Mich. 496 That decision was written by Judge Cooley, one of the most eminent authorities on constitutional law that this country has ever produced, and which decision is quoted with approval wherever the particular question here presented has been raised. Justice Cooley there said: "It is next objected that the law is invalid because in conflict with section 29 of article 4 of the constitution, which provides that 'no law shall be revised, altered or amended by reference to its title only; but the act revised and the section or sections of the act altered or amended, shall be re-enacted and republished at length.' The act before us does not assume, in terms, to revise, alter or amend any prior act, or section of any act, but by various transfers of duties it has an amendatory effect by implication, and by its last section it repeals all inconsistent acts. We are unable to see how this conflicts with the provision referred to. If, whenever a new statute is passed, it is necessary that all prior statutes modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the state would require to be republished at every session, and parts of it several times over, until, from mere immensity of matter, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposed new duties upon the ex-

ecutive and the citizen, it has thereby become necessary to re-enact and republish the various laws relating to them all as now modified, we shall find before the act is completed, that it not only embraces a large portion of the general laws of the state, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title. This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purports only to insert certain words, or to substitute one phrase for another in an act or section, which was only referred to, but not published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.''

It is there said that the constitutional provision under consideration must receive a reasonable construction with a view to give it effect, and the mischief desired to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves are sometimes deceived in regard to their effect. There can be no doubt in regard to the effect of the act under consideration, and it simply imposes on the state veterinary surgeon all of the duties that were imposed by the act of 1901 on the state sheep inspector and his deputies. The first three sections of that act do not refer to the duties of the sheep inspector, and are repealed by the act of 1905. Beginning with section 4 of the act of 1901, to and including section 28 of said act, we find the authority and duties of the sheep inspector and his deputies prescribed therein. Said

duties are imposed by the act in question on the state veterinary surgeon and his assistants. It leaves those duties clear and concise. They are not blind to anyone, nor would they deceive anyone in regard to their effect.

In *Evernham v. Hulit*, 45 N. J. L. 53, which is a case involving a provision of the New Jersey constitution somewhat broader than that of our own, the court said: "A construction of this constitutional provision which would sustain the contention of the plaintiff on *certiorari* would lead to the most embarrassing results. It would be equivalent to holding that the legislature can pass no act changing any part of the statute law in force in this state without re-enacting at length every section in the whole body of existing statutes that might be affected by the new legislation. Since the constitutional amendments went into effect, a considerable number of acts have been passed designed to simplify and make most efficacious the mode of making and collecting assessments for local improvements in the municipalities of this state. These were subjects specially provided for in sections contained in their several acts of incorporation. General acts have always been passed providing for the assessment, collection and lien of taxes—subjects specially provided for in sections incorporating cities, towns and townships, as well as in several parts of the general tax law of this state. In many instances, provisions of this kind are contained in long sections, in which it is usual to express and define the general powers of corporations. Sometimes they are distributed in appropriate places in different sections of the acts. If this constitutional provision has made it necessary to the validity of a new statute on the subject that every prior statute on the same subject which may be altered or modified should be inserted in it at length, it would be quite impossible to legislate at all on the subject mentioned, or on kindred subjects; for a statute which would comply with such a requirement would probably be obnoxious to that other provision of the constitution, that every law should embrace but one object, and that object should be embraced in its title."

See, also, *Denver C. R. R. Co. v. Nester,* 10 Colo. 403, 15 Pac. 714; *State v. Scott,* 32 Wash. 279; 73 Pac. 365. The act of 1905 does not amend, unless it be by implication, any of the sections of the law of 1901. It does, however, repeal certain sections of the latter act in full and others to the extent that it conflicts with them, but we think the rule is that neither express nor implied repeals come within the constitutional inhibition found in said section 18, article 3. Under a constitutional provision similar to our own, the supreme court of Illinois, in *School Directors v. School Directors,* 135 Ill. 464, 28 N. E. 49, said: "Two or more laws relating to the same subject or different parts of the same subject matter are not necessarily amendatory to each other, within the meaning of this clause of the constitution, although they may be construed together as *in pari materia.* All laws on the subject of schools, in city charters or elsewhere, are necessarily parts of the school laws."

Said act of 1905 is valid and constitutional, and the peremptory writ of mandate must be issued as prayed for, and it is so ordered.

Stockslager, C. J., concurs.

Ailshie, J., concurs, to the extent only that the law of 1905 is valid and constitutional.