MRS. AUSTIN PEAY, COMPLAINANT, APPELLEE, *v.* EDGAR J. GRAHAM, COMPTROLLER *et al.*, DEFENDANTS, APPEL-LANTS.

(*Nashville,* December Term, 1930.)

Opinion filed February 21, 1931.

154

Austin Peay, Jr., Wm. J. Wade, Norman Farrell, Avery Handley, Charles C. Trabue and Thomas H. Malone, for complainant, appellee.

L. D. Smith and R. E. Maiden, for defendants, appellants.

Mr. Justice Chambliss delivered the opinion of the Court.

This suit was brought to enjoin the payment of an appropriation made by the Legislature at the extra session of 1929 of $100 to each of its members, the act reciting that it was for stenographic hire and other unenumerated official expenses. Sustaining the insistence that the appropriation was in effect an increase of compensation, above that fixed by the constitution, the Chancellor overruled the demurrer of defendants, and issued the injunc-

tion. The language of the act, being Section 4A of chapter 32 of the Acts of the Extra Session of 1929, is as follows:

"There shall be appropriated and paid out of any moneys in the Treasury to each member of the legislature the sum of one hundred ($100) dollars for stenographic hire and other extraordinary official expenses necessarily incurred by each member of the legislature at this extra session in the course of and in consequence of their duties as legislators, and the legislature declares as a fact that every member of this body has expended, at this extra session, at least the amount above set out for the official expenses above mentioned, and the State Treasurer is hereby authorized and directed to pay said sums of money as above set out."

The constitutionality of similar appropriations has been passed on by this Court in *State ex rel.* v. *Thomason,* 142 Tenn., 527, and *Peay* v. *Nolan,* 157 Tenn., 222. In the first of these the appropriation was sustained, in the latter denied.

In the Thomason case it was held (1) that no appropriation could be constitutionally made for an increase of *compensation* to members of the General Assembly, and (2) that an appropriation for *official expenses,* as distinguished from compensation, may be constitutionally made. These propositions were re-affirmed in *Peay* v. *Nolan.* The cases differ in this: In the Thomason case it was conceded that the appropriation was in fact for official expenses; in the Nolan case it was held that the appropriation, while nominally for official expenses, was in effect for compensation,—this being the determinative fact in issue. In the instant case the attack on the appropriation is on the identical ground relied on

in the Nolan case, and the question now is whether or not the case now presented may be distinguished from that presented in the Nolan case.

Two distinctions are attempted to be made. The first relates to a variance in the form or language of the legislative enactment. The second to a difference in the amount. Under the first head it is stressed that the enactment now before us contains language, not only designating the appropriation as for expenses, as was true of that considered in the Nolan case, but goes further and expressly "declares as a fact that every member of this body has expended, at this extra session, at least the amount above set out for the official expenses above mentioned." The insistence made for appellants is that this declaration of a fact, which is the predicate of the enactment, and essential to its constitutionality, is a finding of fact conclusive on the courts.

Reliance is had on approving statements of this general rule in both of our cases above cited. For example, in *State ex rel.* v. *Thomason,* it was said that "this declaration of the Legislature is a conclusive finding of facts," etc., and in *Peay* v. *Nolan* that "the rule is that every inquiry into the validity of a legislative act is approached with the presumption that the legislature observed the Constitution, and when validity depends upon the existence of certain facts, the legislative determination is conclusive." But, all the authorities cited for support of this general statement of the rule clearly recognize that the legislative declaration is never binding on the Court unless consistent with reason and common knowledge.

In *Block* v. *Hirsh,* 256 U. S. 135, 65 L. Ed. 895, a case dealing with the regulation of rentals in what was de-

clared to be a public emergency, the Court, voicing the general rule, observed that "a declaration by the legislature concerning public conditions that, by necessity and duty, it must know, is entitled at least to great respect." However, in a later case reviewing an act purporting to continue in force the original rent act, the Court declined to be bound by the legislative finding and declaration that the same emergency existed as when the original Rent Act was passed in 1919. The Court held that changed conditions in the District of Columbia were "a matter of public knowledge." Said the Court:

"We repeat what was said in *Block* v. *Hirsh*, 256 U. S., 133, 154, as to the respect due to a declaration of this kind by the Legislature so far as it relates to present facts. But even as to them a Court is not at liberty to shut its eyes to an obvious mistake, when the validity of the law depends upon the truth of what is declared." *Castleton Corp.* v. *Sinclair*, 264 U. S., 543.

Here the Court clearly recognized its right and duty, even in a case in which public policy and rights were involved, to look behind the declaration, or finding, of the Legislature, and give application to contradictory facts of common knowledge, of which the courts must take judicial notice.

*Motlow* v. *State*, 125 Tenn., 559, is cited for the rule in *State ex rel.* v. *Thomason.* Here this Court was dealing with the question of the reasonableness of a classification under the police powers, and said, "when the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed." In 12 C. J., 798, it is said, "For the purpose of sustaining a statute, it is said

by some authorities that it is the duty of the Court to assume the existence of any conceivable state of facts, but by the better rule, the Court is required to assume for this purpose the existence of such facts only as may *reasonably* be conceived to exist.'' Our case of *Thomas* v. *State,* 136 Tenn., 47, is cited for recognition of this better and more liberal rule. In the last cited cases, and others, it is made clear that the Court is not required to assume the existence of any fact that cannot be *reasonably* conceived.

As already suggested, the distinction mainly insisted upon rests on the different language employed. Quite evidently this distinction goes to the form only, rather than the substance. While in the instant case the declaration of fact is expressed, in the former it was necessarily implied and was treated as having been made. No essential or controlling distinction can be taken between a legislative declaration made in words and one made by clear implication. A declaration that an appropriation is made for expenses, rather than compensation, is in all reasonable effect a declaration that the sum appropriated has been so expended. As said in *Peay* v. *Nolan,* ''it is not the form of a statute, or the words that are used, but the object intended and the result reasonably effected by their use that must control the determination. *Standard Oil Co.* v. *State,* 117 Tenn., 639; *Mugler* v. *Hanson,* 123 U. S., 623.'' And in the recent case of *Educational Films Corp. of Am.* v. *Ward et al.,* decided by the Supreme Court of the United States January 12, 1931, Mr. Justice Stone, considering the effect to be given a legislative declaration defining a tax, said:

''But the nature of a tax must be determined by its operation rather than by particular descriptive language

160

which may have been applied to it. As was said in *Macallen Co.* v. *Massachusetts,* 279 U. S., 620, 625, 626, '. . . neither state courts nor legislatures, by giving the tax a particular name, or by using some form of words, can take away our duty to consider its nature and effect' . . . this Court must determine for itself by independent inquiry whether the tax here is what, in form and by the decision of the State Court, it is declared to be."

This principle is clearly recognized in the opinion of this Court in *State* v. *Anderson,* 144 Tenn., 564, and elsewhere.

Not only is it so held in cases dealing with taxation and kindred subjects of a public nature, some of which have been cited, but we are not without cases from various jurisdictions wherein the constitutionality of appropriations by legislature for the expenses of State officials having constitutionally fixed salaries has been considered.

For example, in *State ex rel.* v. *Raine,* 49 Ohio St. 580, the Supreme Court of Ohio, holding an act void which undertook to allow a County Commissioner $1000 per annum "for expenses incurred by said Commissioner" the constitution having prohibited increases of salaries during a term, forcefully said: "Constitutional guarantees would afford but slight barriers to encroachments by any of the departments of the government if the forbidden object could be accomplished by simply using a form of words that did not name it in express terms." And see, among others, *Fergus* v. *Russell,* 270 Ill., page 304, Ann. Cas. 1916B, 1120; *Terrell* v. *Middleton,* 108 Tex., 14, 187 S. W., 367; *Lackenby* v. *Post Printing Co.,* 65 Col., 443, 176 Pac., 490; *Ashton* v. *Ferguson,* 164 Ark.,

254, and *State ex rel.* v. *Turner,* 117 Kas., 755, wherein appropriations were nominally made to different state officials for "expenses," but in none of these cases did the Court hesitate to look beyond the wording to the effect of the enactment, "no matter about the terms employed," and give application to that which the Court judicially knew with respect to the proposed allowance, holding in each of these cases that, although designated as expenses by the acts under consideration, the effect was to increase the compensation of the officials involved and was therefore in violation of the constitution. Other cases might be cited, but these are sufficient for illustration. We must conclude that a legislative declaration of fact is subject to the test of reason and judicial knowledge.

In *Peay* v. *Nolan,* the appropriation was $750 for each member for seventy-five days; in the instant case the appropriation is $100 for twelve days. The proportion is practically the same. In the former case it was held that the Court could not reasonably assume that each and every member of the legislature had incurred official expenses of $750. Neither can we reasonably assume that in this case each member incurred official expenses of as much as $100. From the language employed it is apparent that the legislature did not undertake to determine the exact amount expended by each member for official expenses.

We have heretofore clearly recognized and now reaffirm the right of members of the legislature to be reimbursed for such official expenses as they may legitimately incur; to be ascertained and determined by such reasonable method as its wisdom may suggest. An appropriation of any substantial amount for that purpose,

which does not have for its basis some reasonably definite determination of the amount of official expenses incurred by the several members, does not satisfy the constitutional limitation, and for that reason cannot be sustained. Affirmed and remanded.

GREEN, C. J., concurs in result.